With respect to the respondent, Ms. W., circumstances are somewhat different. The court does find that DCF made reasonable efforts to reunify both children with their mother. Reasonable means just what it says. Reasonable, not everything possible. And that necessarily entails an inquiry into existing circumstances. DCF referred Ms. W, who I will now refer to as the respondent, to domestic violence counseling, counseling with Dr. McElvy at United Services, previously at intensive behavior management training. And the court does find that by clear and convincing evidence that DCF did use reasonable efforts.
The sole ground for termination with respect to the respondent, Ms. W., is failure to rehabilitate. And in that respect, first I'll find as the record reflects, that there was a previous adjudication in this case of neglect made in 1998. July 29, 1998. And on May 13, 1999, there were extensions. CT Page 7339-p
Section 17a-112 requires the court to determine whether the degree of personal rehabilitation encourages the belief that within a reasonable time, the parent could assume a responsible position in the life of the child. Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent and not merely the ability to manage his or her own life.
However, rehabilitation does not require the parent to be able to assume full responsibility for the child without the use of available support programs, inquiry regarding personal rehabilitation requires us to obtain an historical perspective of the respondent's child caring and parenting abilities. What constitutes a reasonable time is the factual determination that must be made on a case by case basis.
The respondent has apparently a lifelong problem with her associations with violent males. There's evidence that all of her relationships have been marked by the domestic violence. Intensive behavior management training that the respondent attended, the evidence is that's a basic, I think it was called, the end-of-the-line program. Intensive behavior management training reported that the respondent's limited imitations were too substantial, that she could not or would not stop yelling. She was noncompliance and also had difficulty focusing, listening, and taking responsibility for events. She discontinued counseling with Dr. McElvey for reasons which certainly are not valid. Even if, even if, the doctor got into issues involving the respondent's health. That was an appropriate area to deal with in the domestic violence counseling and it was entirely inappropriate for the respondent to take it upon herself to unilaterally terminate that service.
Of course, the bottom line in some respects here is that Mr. J. has continually been in the home. He is a threat to the respondent, but to more particularly, to the children. I note again that the respondent has a history of domestic violence relationships and I also note that her own personal background, the evidence is that the respondent loves her children, but she's made her choice. There is something that apparently prevails over the care of the children in her mind. And whatever that is, it requires Mr. J's presence in the home.
She was non-compliant with the counseling for domestic violence. She has the man still in her home. There is no way that the court can find anything but the respondent has failed to achieve a degree of personal rehabilitation, which would encourage the belief that within a reasonable CT Page 7339-q time, she could assume a responsible, responsible, position in the life of these children. And the court makes that finding by clear and convincing evidence.
Let me now go to the mandatory findings. First, I find that DCF timely offered appropriate services to the respondent to address her domestic violence issues and to facilitate the reunion of the children with the respondent.
The court order is in evidence as exhibit "10" and the respondent complied with some but not all of the expectations of the court. There is no evidence that she did not keep her appointments substantially with DCF. She certainly visited her children as often as was permitted. She participated in counseling and signed releases. However, she failed to satisfy that expectation because she unilaterally terminated her own counseling, which was necessary for her rehabilitation.
She did not secure and maintain adequate housing since the housing contained Mr. J. That is not adequate housing. That person is a danger to the health of the children. And I note that it has been well documented and often observed that children who witness domestic violence suffer from behavioral, emotional, and decognitive problems. So, that housing was not adequate.
She did not engage in substance abuse. And the court so finds.
With respect to best interest. Best interest must be found by clear and convincing evidence. And I simply cannot find that with respect to Rashana. This is a 16 and half year old teenage girl. She wants contact with her mother.
First rule is do no harm. Now, that's not the test of the requirement of the statute, but certainly in finding best interest, we don't want to do any harm to this 16 and a half year old girl, who has enough problems. If she wants contact with her mother, who is a significant figure in her life, it would not be in harmony with her best interest to deny her that contact. Especially, when there is no realistic hope for adoption.
And Ms. B so testified this morning. For that reason, with respect to Rashana, not surprisingly, the court will deny the petition for termination of parental rights.
With respect to Rysene, the 9 year old boy, unlike Rashana, who feels CT Page 7339-r very close to her mother, who needs her mother even though she does have an obviously close emotionally relationship with her foster mother, who has exercised care, custody, and control over her for quite some time, Rysene, he's more distant from his mother. His mother is not such an essential figure in his life. She is not his psychological parent. She is an important person as Dr. Green testified, but she is not as central to him.
On the other hand, he does have a close feeling and emotional ties with his foster parents who have cared for him for certainly over a year. Rysene is a special needs child having ADHD. I note that it is telling that he doesn't like to discuss his mother at all, in fact, very reluctant. He likes contact with his siblings, but his need for permanency is even more important and he's at an age where he still may have that opportunity for permanency and should be afforded that opportunity by the court.
In light of the fact that the respondent does not occupy such a central position in his life and in light of the fact that this is a young boy who needs permanency, the court finds by clear and convincing evidence, that it's in Rysene's best interest that the respondent's parental rights be terminated. And with respect to Rysene, parental rights are terminated.
The commissioner is appointed statutory parent for purpose of securing permanent placement for Rysene. A report shall be filed with the court within 90 days discussing what efforts have been undertaken in that respect pursuant to federal and state statute.
Thank you very much. We'll stand adjourned.